UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
WILLIE BUTLER,                          :
                                        :
                        Plaintiff,      :     12 Civ. 5693 (DLC)
                                        :
            -v-                         :     OPINION & ORDER
                                        :
DIRECTOR DR. GENOVESE, et al.,          :
                                        :
                        Defendants.     :
                                        :
----------------------------------------X

APPEARANCES:

For plaintiff:

Willie Butler, pro se
04-A-3288
Otisville Correctional Facility
57 Sanitorum Road, P.O. Box 8
Otisville, NY, 10963-0008

For defendants:

Neil Shevlin
Assistant Attorney General
120 Broadway – 24th Floor
New York, NY 10271


DENISE COTE, District Judge:

     Plaintiff Willie Butler ("Butler"), proceeding pro se,

filed this action pursuant to 42 U.S.C. § 1983 seeking

injunctive relief against defendants Dr. Maryann Genovese ("Dr.

Genovese"), Dr. Tasbirul Alam ("Dr. Alam"), and Nurse Barbara

Furco ("Furco") (collectively, "defendants").[1]  Butler, an inmate incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility ("Sing Sing"), alleges that the defendants violated his constitutional rights by failing to provide him with proper medical treatment.  On August 8, 2013, the defendants filed a motion for summary judgment.  For the following reasons, the motion is granted.


BACKGROUND

     The following facts are undisputed or taken in the light most favorable to the plaintiff unless otherwise indicated.  On June 18, 2012, at approximately 7:40 a.m., Butler reported to the Sing Sing infirmary complaining of "malaise" and a throbbing headache that had increased in intensity over the prior few days.  He was seen initially by Nurse Lightfoot, who conducted an Electrocardiogram ("EKG") and made preliminary notes in his medical file.  Butler was asked to wait to see his primary care physician, Dr. Alam.

     At approximately 10:00 a.m., Dr. Alam examined Butler. Butler informed Dr. Alam that he was not feeling well and had

---

[1] Even if the complaint were construed to seek damages, for the reasons stated below, the defendants would be entitled to summary judgment.

been suffering from headaches for the last 2 to 3 days.  Dr.
Alam noted in Butler's medical file that Butler's tonsils and
neck glands were enlarged.  He diagnosed Butler with an upper
respiratory infection or tonsillitis.  Dr. Alam prescribed an
antibiotic, Zithromax, for the infection and ibuprofen for the
headaches as needed.  Dr. Alam subsequently modified the
antibiotic prescription to a 10-day supply of Doxycycline after
he was advised by the Sing Sing pharmacist against prescribing
Zithromax because of its interaction with one of Butler's heart
medicines, Digoxin.[2]

On the same day, Butler completed a grievance against Dr.
Alam and two other medical professionals: Dr. Genovese, the
medical director at Sign Sing, and Nurse Furco.  In the
grievance, Butler stated that, while still in the infirmary
after meeting with Dr. Alam, he asked for further medical
assistance from a nearby officer.  Nurse Furco then sent him
back to Dr. Alam, who allegedly became "very upset" with Butler.
According to Butler, Dr. Alam told Butler that he would not
"listen to [his] bullshit because" Dr. Alam had "spoke[n] with
Medical [Director] Genovese who told him that [Butler] ha[d] a
problem with [his] stomach."  When Butler asked to see Dr.

---

[2] Dr. Alam's modification was oral and thus not noted in the
medical file.  It is not disputed, however, that Butler received
Doxycycline, not Zithromax.

Genovese in order to verify the statement, Dr. Alam allegedly
"stormed out of the office."  Dr. Alam returned seconds later,
stating that Dr. Genovese "told him for [Butler] not to worry."
Butler apparently asked again to see Dr. Genovese, and Dr. Alam
allegedly denied Butler's request and "began to yell causing the
officers to come in the office."

Separate from this narrative relating to the events of June
18, Butler's grievance included two additional points.  First,
he accused Dr. Alam of "giving medication [that is] for
different illnesses."  He further accused Dr. Alam of
prescribing medicine that is the cause of his light-headedness
and head pains, and he identified a red pill in particular.
Second, he alleged that Furco refused to give him an EKG, which
he asserts is mandatory given his heart condition and pacemaker,
and that she told him "lie after lie," such as that the EKG
machine did not have sufficient paper.  Butler completed the
grievance by requesting the removal of these medical
professionals.

On June 19, Butler signed for and received his ibuprofen
prescription and his 10-day prescription for Doxycycline.
Butler did not, however, complete the prescription for
Doxycycline.  By his own admission, he stopped taking the
medicine sometime between June 22 and June 25.  Butler states
that he did so because the Doxycycline was causing him to vomit

4

and break out with hives.  Butler admits that the former symptom
was occasional and disappeared after he stopped taking the
medicine.  The latter symptom, Butler alleges, persisted even
after he stopped taking the medicine.

Between June 19 and July 16 (the date on Butler's federal
complaint in this case), Butler was examined by a medical
professional on five separate occasions: June 25, and July 3, 5,
9, and 13.  The notes for June 25 and July 3 do not include any
statement that Butler complained of suffering an adverse
reaction to the Doxycycline, either in the form of vomiting or
hives.  To the contrary, the notes for June 25 state that Butler
reported "feeling better."  The notes for July 5 include a
statement that Butler complained of migraines and nausea.  The
nurse noted that Butler had stopped taking the Doxycycline due
to his belief that it brought about the nausea.  The nurse
scheduled Butler to see Dr. Alam at his next appointment.  The
notes for July 9 state that Butler continued to complain of
migraines and nausea, the latter of which he continued to assert
was a side effect of the Doxycycline.  Butler was given Tylenol
for the migraines.  The notes for July 13 state that Butler
continued to complain of migraines and was given more Tylenol.

On July 23, Butler had his follow-up appointment with Dr.
Alam.  Dr. Alam noted that Butler reported that the Doxycycline
had given him hives.  Dr. Alam's notes do not include any

5

assessment that Dr. Alam made regarding the hives issue or any response that Dr. Alam gave to Butler.

In a letter to the Court dated July 23 and received on July 26, Butler wrote that Dr. Alam "admit[ed] to prescribing [him] the wrong medication" -- both because his file stated that he was allergic to Doxycycline and because it was not supposed to be taken with Digoxin. He further alleged that, despite becoming "very sick" from the Doxycycline, he was submitting sick call sheets from his cell but was ignored. He stated his belief that his sick call sheets were being destroyed or hidden.

On July 30, Butler was seen by a nurse. Her notes state that Butler continued to complain of hives resulting from the Doxycycline. She examined Butler and wrote that no hives were visible at the time. She further noted that, while Doxycycline could increase the Digoxin level, Butler was in "non-compliance," having taken his Digoxin only five times in July.

On November 1, Butler saw his cardiologist, Dr. Tartaglia, to check on his pacemaker. The visit was based on a referral by Dr. Alam, dated October 10. Butler's prior visit with Dr. Tartaglia was on April 5.

Throughout this time period, Butler continued with the internal grievance process at Sing Sing. On June 22, Butler's aforementioned grievance was filed. On July 3, the Inmate Grievance Review Committee held a hearing; on July 10, it issued

6

a recommendation that the Superintendent "accept" the case.   The
Committee noted that the statements of Dr. Genovese, Dr. Alam,
and Furco regarding the events of June 18 were "contradictory."
On July 12, Butler filed his appeal with the Superintendent.   On
August 9, the Superintendent denied Butler's grievance.   On
August 17, Butler appealed to the Central Office Review
Committee.   On April 10, 2013, the Committee affirmed the
Superintendent's denial of Butler's grievance.

     As noted, while the grievance process was ongoing, Butler
filed this lawsuit.   His complaint is dated July 16, 2012; it
was filed on July 23.   The complaint names three defendants: Dr.
Genovese, Dr. Alam, and Nurse Furco.   The complaint alleges
that, on June 18, Butler reported to sick call to be checked out
for abnormal headaches and "was given the wrong meds."
Specifically, he alleges that he should not have been prescribed
Doxycycline due to its interaction with his heart medicine,
Digoxin.   He further alleges that he became "very sick" in the
form of vomiting and hives but was "denied medical attention"
and sent to his cell.   Butler's grievance is attached to his
complaint.

     Butler submitted two more letters to the Court relating to
the merits of his claim, dated October 22 and December 22, 2012.
In the October 22 letter, Butler requested a change in his
medical provider as he alleged that Dr. Alam suffered under a

conflict of interest, was acting towards him "with a[n] attitude," and that Dr. Alam apparently acted to prevent Butler from seeing his cardiologist to check on the status of his pacemaker.  He further alleged that someone placed an incorrect notation in his medical file that he was being paroled.

In the December 22 letter, Butler made a series of points. First, he alleged -- similar to his grievance -- that his complaints after seeing Dr. Alam on June 18 were disregarded. Second, he alleged that Dr. Alam prescribed him Doxycycline despite his medical file stating that he was allergic to the drug.  Third, Butler challenged Dr. Alam's diagnosis that he suffered an upper respiratory infection on June 18.  Fourth, he noted the inconsistency between Dr. Genovese, Dr. Alam, and Furco's submissions in the internal grievance process.

Defendants moved to dismiss the suit on January 23, 2013 on the basis that Butler had failed to exhaust his administrative remedies.  By Order dated March 22, the Court denied the motion to dismiss, and the case proceeded to discovery.  See Order of March 22, 2013.

On August 2, 2013, defendants filed a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P., and served Butler with a "Notice to Pro Se Litigant Who Opposes a Motion for

Summary Judgment" pursuant to Local Rule 56.1.[3]  Butler submitted both an initial and supplemental opposition by September 6.  The defendants chose not to submit a substantive reply, instead stating by letter that they were resting on their initial filing.  Thus the motion was fully submitted as of September 27.

DISCUSSION

Defendants raise anew a procedural argument presented in their motion to dismiss, that Butler's action must be dismissed because his complaint was filed before he fully exhausted his administrative remedies.  Although the Court already ruled against defendants on this precise issue when denying the motion to dismiss, defendants are correct that this prior ruling was in error.  See Neal v. Goord, 267 F.3d 116, 121-23 (2d Cir. 2001)(holding that exhaustion subsequent to the filing of an action is insufficient under 42 U.S.C. § 1997(e)), abrogated in part on other grounds by Porter v. Nussie, 534 U.S. 516 (2002). Thus, Butler's premature filing of this action provides an independent ground for dismissal of this case, although such dismissal would be without prejudice.  Because discovery has been completed, the Court turns to the merits of the summary

---

[3] A "Notice For Pro Se Litigants Regarding Opposition to a Summary Judgment Motion" was also attached to the May 10, 2013 Scheduling Order.

judgment motion, in which the defendants seek dismissal with prejudice.

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Rule 56(e), Fed. R. Civ. P.; see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts

that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering the summary judgment motion, a court liberally construes all submissions by the pro se plaintiff and "interpret[s] [them] to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). The application of this forgiving standard for pro se litigants, however, "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

To sustain claims under 42 U.S.C. § 1983, the plaintiff must show that he was "deprived of rights, privileges, or immunities secured by the Constitution and laws [of the United States]" by a person acting under color of state law. Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (citation omitted); see also Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."). Therefore, "the first step in any § 1983 claim is to identify the specific constitutional right allegedly

infringed."  Pabon v. Wright, 459 F.3d 241, 252–53 (2d Cir.
2006) (citation omitted).

    As a sentenced prisoner, all of Butler's claims arise under
the Eighth Amendment.  "The Eighth Amendment forbids 'deliberate
indifference to serious medical needs of prisoners.'"  Spavone
v. New York State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d
Cir. 2013)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).
"A deliberate indifference claim contains two requirements.  The
first requirement is objective: the alleged deprivation of
adequate medical care must be 'sufficiently serious.'"  Id.
(quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  "The
second requirement is subjective: the charged officials must be
subjectively reckless in their denial of medical care.  This
means that the charged official [must] act or fail to act while
actually aware of a substantial risk that serious inmate harm
will result."  Id. (citation omitted).

    Based on a close review of Butler's complaint, including
the grievance attached to it, various letters to the Court, and
his deposition, Butler's allegation that he was denied medical
treatment on June 18, 2012 appears to consist of two distinct
Eighth Amendment claims.  First, he alleges that Dr. Alam was
deliberately indifferent to his medical needs because he
prescribed Butler Doxycycline, even though the medical file
stated that Butler was allergic to the drug.  Second, he alleges

that Dr. Alam was deliberately indifferent to his medical needs
because Doxycycline should not be taken with Butler's heart
medicine, Digoxin.   The additional factual material presented by
Butler has been considered as evidence that Butler has offered
in support of his two Eighth Amendment claims.   Butler's alleged
harm from both claims is that he suffered vomiting and hives;
his sought-after relief is the removal of all three medical
professionals, either entirely or at least from his care.

A. Allergy to Doxycycline

        Butler's principal Eighth Amendment claim is that Dr. Alam
improperly prescribed him Doxycycline when his medical file
stated that he was allergic to the drug.[4]   Defendants assert that
Butler's vomiting and hives are insufficiently serious to raise
an Eighth Amendment claim, and that Butler has made no showing
of any causal connection between the Doxycycline and these
symptoms because Butler admits that he stopped taking the
medicine before any record of his symptoms appears in the
medical file.   Defendants also assert that Dr. Alam was not
deliberately indifferent to Butler's Doxycycline allergy
because, as of June 18, 2012, Butler's file did not state that

----

[4]   Although barely mentioned in Butler's complaint, this claim
was presented in letters to the Court, Butler's deposition, and
in his opposition to summary judgment.

13

he had any such allergy.  Defendants point out that it was Dr. Alam who contacted the Sing Sing pharmacy to report Butler's allergy, which led to the Doxycycline allergy being added to Butler's electronic and physical file.

It is assumed without deciding that Butler's alleged allergic reaction to the Doxycycline raises a question of fact as to whether he suffered a sufficiently serious medical condition.[5]  Defendants have shown, however, that there is insufficient evidence of Dr. Alam's deliberate indifference to the alleged allergy to raise a question of fact requiring resolution at trial.

Not a single page in Butler's medical file includes a reference to his Doxycycline allergy that predates June 18, 2012.  Every reference to Butler's Doxycycline allergy in the medical file postdates the date on which Dr. Alam prescribed Doxycycline.  Butler himself does not assert that he was aware of any such allergy when he saw Dr. Alam on June 18 and does not describe any prior occasion on which the allergy was diagnosed or DOCCS was informed of the allergy.

---

[5]  Butler admitted in his deposition that his vomiting was "occasional" and that it disappeared after he stopped taking the Doxycycline, which was within one week of the June 18 appointment.  As to the hives, there is no evidence in the medical file that Butler actually had hives.  For example, the notes for July 30 state that, even though Butler complained of hives, no hives were visible.

14

The sole evidence offered by Butler to support his claim
that Dr. Alam may have been aware of the allergy as of June 2012
is the front cover of his medical file.  Because this cover is
Butler's sole evidence, the Court describes it in some detail.
The top third of the cover consists of a header with a seal of
New York State, the description "State of New York, Department
of Corrections, Health Record folder," and entries for an
inmate's name, identification number, date of birth, and
allergies.  Handwritten in these entries on Butler's cover are
his full name, identification number, date of birth, and, toward
the right margin, two allergies: "Pencillin" and "Doxycy."
Notably, the two allergy entries appear to have been written by
different persons at different times.  "Pencillin" is written in
print handwriting; "Doxycy" is written in cursive.  Below the
header area, on the left side of the cover, are two stamps.  One
stamp reads "Confidential Information."  The second stamp reads
"Chart Thinned" with entries for a date and signature.  It is
initialed and dated "2/9/12."  Finally, on the bottom right side
of the cover are some handwritten notes that are illegible.
Butler asserts that this cover, which bears a date of February
9, 2012 and his Doxycycline allergy, is proof that his
Doxycycline allergy was officially part of his medical records
as of February 2012.

There is, however, no reasonable basis by which one could reach that conclusion.  The February 19, 2012 date is part of the "Chart Thinned" stamp and is an entirely separate entry from the allergy list.  Furthermore, it is quite clear from the difference in handwriting that the word Doxycycline was added to the cover sometime after the Penicillin allergy was noted.  Given that the Doxycycline allergy could have been added at <u>any</u> <u>time</u> since Butler's medical file was created, it is pure speculation for Butler to suggest that it must have been added on February 19, 2012 simply because that is the only date that appears on the cover of his medical file.

Moreover, the remainder of Butler's medical file undermines the proposition that Butler's Doxycycline allergy was established as of February 19, 2012.  In a patient referral document dated April 2012, it lists only "Penicillin" in the allergy field.  Additionally, in four "Treatment & Medication Record" sheets, dated May through August 2012, the allergy field lists only "Penicillin."  Butler has therefore failed to offer sufficient evidence that would permit a jury to find that, as of June 18, Dr. Alam was on notice of Butler's allergy to Doxycycline.

B. Interaction with Digoxin

The principal focus of Butler's complaint is that Dr. Alam erred by prescribing him Doxycycline when it should not be taken with his heart medicine, Digoxin.  Defendants assert that Doxycycline is not "contraindicated" to Digoxin[6] and that, in any event, Butler was generally non-compliant in taking Digoxin.

Butler has failed to raise a question of fact that Dr. Alam was deliberately indifferent to his serious medical needs by prescribing Doxycycline to Butler when he was already taking Digoxin.  Defendants have submitted the declaration of Dr. Alam stating that Doxycycline is not contraindicated to Digoxin, and that a patient taking Doxycycline can safely take Digoxin so long as the Doxycycline prescription is limited to ten days, which it was here.

---

[6] Although not explained by defendants, the definition of "contraindicated" in medical parlance is a "specific situation in which a drug, procedure, or surgery should not be used because it may be harmful to the patient."  MedlinePlus Medical Encyclopedia, U.S. National Institutes of Health, Jan. 21, 2013, http://www.nim.nih.gov/medlineplus/ency/article/002314.htm. There are two types of contraindications: "relative" and "absolute."  The former means that "caution should be used when two drugs or procedures are used together," whereas the latter means that "the event or substance could cause a life-threatening situation."  Id.  Although defendants do not specify which type or types of contraindication they are disputing, it is likely that they mean "absolute contraindication" because Dr. Alam concedes that there may be adverse drug interactions between Doxycycline and Digoxin in certain circumstances not present here.

Butler does not dispute the defendants' assertions in his opposition to summary judgment.  The medical label for Doxycycline lists Digoxin as a possible drug interaction and counsels that "additional monitoring" "may be needed" when a patient is taking Digoxin.  Because the medical label is consistent with both Dr. Alam's declaration and his treatment of Butler in this case, it does not raise a question of fact that Dr. Alam was deliberately indifferent to Butler's serious medical needs.


CONCLUSION

The defendants' August 2, 2013 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendants and close this case.


SO ORDERED:

Dated:    New York, New York
          November 15, 2013


_____
          DENISE COTE
     United States District Judge

18

COPIES MAILED TO:

Willie Butler
04-A-3288
Otisville Correctional Facility
57 Sanitorum Road, P.O. Box 8
Otisville, NY, 10963-0008